who are going to orally argue, please come up to the podium and introduce yourselves to the court, both sides. And who is representing the appellant? Appellant Neil Novak on behalf of certain underwriters and employees. Mr. Novak? Yes. And the appellee? Michael Duffy on behalf of Mount Hawley. Mr. Duffy? Yes. Okay. Each side will have 15 minutes. Appellant, reserve from that 15 minutes whatever portion you'd like to use for your purpose of reply. Okay. Very good. Mr. Novak, you may proceed. Thank you. May it please the court, I would like to reserve five minutes for rebuttal. As you know, I represent certain underwriters at Lloyd's in this matter. And I'm here today to ask this court to reverse the circuit court's grant of summary judgment in favor of Mount Hawley Insurance Company that found, among other things, that underwriters owed a duty to defend certain additional insureds known as the 311 Entities because they failed to, excuse me, after summary judgment was entered in favor of underwriters named insureds, TOGI. The circuit court's ruling was based on a finding that underwriters breached the duty to defend and as a result they were found to be estopped from asserting any policy defenses. In discussing the three issues before the court, there are certain topics that I want to cover. One of those is the differences between the duties to defend and to indemnify. The second is policy defenses. And the third issue I would like to address is the estoppel doctrine. I'm sorry. I just want to interrupt you. I don't mean to do this to be rude. Do we have a dispute over the duty to defend? We do not. But I think it's important to make a distinction between the duty to defend and the duty to indemnify. There's no question that the duty to defend was breached and that piece is resolved and that's not before this court today. But what I wanted to say about the duty to defend and the duty to indemnify is I think one of the failures in the proceedings below was the failure to separate and analyze those duties because they're based on different considerations and they arise at different times. The duty to defend, as we know, is very broad. And you look at the complaint and you look at the allegations. And if those allegations arguably potentially or possibly fall within the terms of the policy, then the duty to defend is triggered. But the duty to indemnify is different. You look at the claims that actually fall within the terms of coverage in order to determine if the duty to indemnify exists. So we've learned from Elger, Outboard, and Marine in those cases that the duty to indemnify arises when liability is established. And if we take that particular point, we say, well, conversely, if liability is not established, the duty to indemnify does not arise. So at this point, I would suggest that law and logic have to come together to work to produce the right result. So we can say if... Where does estoppel come in? Pardon? Where does estoppel come in? Once the doctrine of estoppel is applied, doesn't that preclude invoking a policy defense? Yes, it does. My point is that the duty to indemnify under the facts of this case is not a policy defense. And that's where I'd like to go, if I may. But now you're conflating the two. You just agreed that the duty to defend was breached. The court found that because you breached the duty to defend, you were estopped from raising any defenses to payment arising out of cantering. Correct? No, I disagree, Your Honor. I think we were... What's the effect of the court's ruling? How does it stop? We are estopped from raising policy defenses. Policy defenses, I would submit, are limitations, exclusions, conditions of the policy. Policy def... Paying liability to pay. No, Your Honor, that's my point. I disagree. Because I think that the issue on the duty to defend has to do with it's an inchoate duty that doesn't arise until liability is established. So the duty to defend and the duty to indemnify are based on different considerations and they arise at different times. At the time that underwriters did not defend the 311 entities, they breached the duty to defend. That was in March of 2010, I believe it was. But at that point the duty to indemnify had not arisen because summary judgment had not been granted in favor of TOGI until approximately a year later. So when you look at that, the point of that is if the duty to indemnify doesn't exist, then the duty to indemnify can't be breached. And in the underlying case, because of the summary judgment ruling, the duty to indemnify never came into existence. It never ripened, as Elger says. And that's an important point. And going back to what I was trying to say with the trial court, I wanted to have the circuit court understand and separate and analyze separately the various duties. The duty to defend was breached. The consequences of that were clear. The duty to indemnify did not arise. Therefore, the possibility of the payment obligation never ripened. And that's what our point is on the differences between the two. I couldn't find a case that said the duty to indemnify is in co-ed. But I think that's the way I would describe it. Because that is a potential duty until the liability is established. We can take that from Elger and outboard Marine. And so if summary judgment ---- Excuse me, counsel. You're saying the duty to defend doesn't arise until liability is established? No, Your Honor, no. The duty to defend arises based on the allegations of the complaint. The duty to indemnify ---- Liability is yet to be determined. Yes. Far from determined. That's correct. And the duty to indemnify arises when liability is established. And in some instances, for example, in the case of a settlement, liability is not determined and people settle. I would submit that had there not been the grant of summary judgment in favor of underwriters named insured, I wouldn't be before you today. But you seem to leave off one further step. Once liability for the insured is established, then the insurer still has the right to claim that although my insured was found liable, the policy doesn't cover that liability, correct? Yes. And that's a claim, that's a defense based upon the document, the insurance policy. Where estoppel comes in, according to the court, is that when the duty to defend is breached, you are precluded, the insurer is precluded from denying coverage when liability is established, if it is established. I think I agree with you. But the important point is when liability is established. Liability for the insured, not liability under the policy to cover the insured. I agree. And that's what didn't happen here. When summary judgment was granted in favor of the insured, TOGI, underwriters insured, liability or the potential for liability to arise was extinguished. Or, as the court held, the insurer was estopped from claiming no liability to cover. And the court did that based on some language that I think evidences a misunderstanding of what the policy defenses are. And that's one of the points that I wanted to raise with this panel. And that is we see a lot of cases that talk about policy defenses, but there's always the rote line about if you breach the duty to defend, you are stopped from asserting your policy defenses. I have not seen a case that itemizes the policy defenses. And I'm thinking of CMK development where the court took property damage and said this is property damage, this is not property damage. And there was a nice comparison between the two. For what a policy defense is and what a policy defense isn't, there aren't cases discussing that. We know that it's not a policy defense that if the policy has expired, you don't have to defend and you're not estopped from saying the policy expired. It's not enforced. Same thing under a general liability policy has to be damages have to be established as a result of property damage or bodily injury caused by an occurrence during the policy period. You look at those and that's the grant of coverage. That's the insuring agreement that says we don't cover anything except what we tell you we cover. And we're going to cover these things. Counsel, are you trying to make basically, I just want to cut to the chase on this, are you distinguishing between things that are excluded from coverage versus what you're saying is covered, is within the scope of coverage? So you're saying that there is non-coverage under the policy as opposed to an exclusion from coverage in this case. An exclusion or a limitation or a condition would be a policy defense. What I'm saying is the scope of coverage or the grant of coverage, if something falls outside of that, that's not a policy defense. That's what you're saying is the situation in this case. Yes. And I can explain that. And it has to do with the court's September 25 order where the court wrote, the underlying summary judgment in TOGI's favor has no bearing on the issue of indemnify to the policy's restriction on additional insured coverage. And there are a couple of problems with that. First of all, the court lumped together the summary judgment and the issue of indemnity and said it doesn't mean anything at all unless you put it in the context of the policy. We submit that the grant of summary judgment had an independent bearing on the duty to indemnify because what it did was it extinguished the possibility of the duty to indemnify from ever ripening. So there was no duty to indemnify TOGI in the underlying case. And therefore, underwriters had no duty to indemnify TOGI. And in fact, if it wasn't clear from the record, underwriters did defend TOGI. They did not defend the 311 entities. So when you look at what the court said and you say, well, a policy defense is a limitation, it's a condition, it's an exclusion, but it's not a grant of coverage, it's not an insuring agreement, the additional insured endorsement says you have coverage for vicarious liability, 311 entities. You have coverage for the respect to liability caused in whole or in part by TOGI's acts or omissions. So when you look back at what the court said where it said the issue of indemnity under the policy or that the summary judgment has no bearing on the issue of indemnity under the policy until it is directly applied to the policy's restriction on additional insured coverage, it's the word restriction that's incorrect. There was no restriction. The 311 entities were strangers to the policy. TOGI was the named insured. TOGI invited the 311 entities to become additional insureds. So underwriters say, okay, you're an additional insured. Here's the grant of coverage. Here's the scope of what we're covering you for. And the scope of what they were covering them for was respect, was with respect to liability caused in whole or in part by TOGI. When the summary judgment was granted, TOGI's liability and the possibility of TOGI's liability was gone. So at that point, that was the end of the game for purposes of coverage that was afforded to the 311 entities for indemnity, not the duty to defend. That's a separate issue. And we breached that at the time and we dealt with that accordingly. But the duty to defend never arose in this case and it could not be breached and an insurer should not be obligated to pay for a duty that never arose and that it didn't breach. Mr. Novak, assuming we were to decide in your favor, can you express for me distinctly what is it that you are saying is an exception to the estoppel doctrine under circumstances where there's been a failure to defend? I would say that a defense that does not rely on a limitation, an exclusion, or a condition, something that's extra contractual, and, for example, the grant of summary judgment to TOGI, has no bearing on the policy. It exists independently. Exploration of a policy or an accident occurring before a policy incepts, completely extra contractual in terms of what that is for purposes of a policy defense. Also, some of those, for example, in this particular case with the duty to indemnify, the duty to indemnify didn't exist at the time the breach occurred. And I think that's a – I understand that that's an unusual concept and these are unusual facts in this case. But again, looking at what Elger and Outboard-Marine tell us, and there is a clear difference between the two because all the courts say, well, the duty to indemnify is much narrower. Well, what does that mean? I think it means that it's a potential obligation that has to be triggered by the finding of liability. And it just didn't happen here. So how do you breach that duty if it never existed? And that's what it comes down to. And when the court said, okay, underwriters, you breached, therefore, you have the duty to indemnify Mount Holly and the 311 entities, what liability were we indemnifying for? It wasn't Toji's because their liability had been extinguished. So it had to be the liability of either the 311 entities or some other entity acting on behalf of the 311 entities, but not Toji. So in that – Let's sum up, if you want, some rebuttal time. In that event, the court also misused the estoppel doctrine by creating coverage where coverage didn't exist. I will stop at this point. Five minutes for rebuttal. Thank you. Thank you. Mr. Duffy? May it please the Court. This case in the trial court was about quite a bit more than it is before Your Honors. Really at issue in this case is simply whether underwriters is a stop to deny indemnity to the 311 entities after it admittedly breached its duty to defend. Sitting here listening to underwriters' argument about the duty to indemnify being an inchoate obligation with respect to a carrier, I suppose in some ways it might be. But to suggest that a breach of a duty to defend can never have a preclusive effect in terms of preventing the insurer from raising a policy defense because there's no duty to indemnify turns everything on its head. The obligation to defend arises when the lawsuit is filed and served on the insured. The duty to indemnify doesn't happen until many years later. So it's always going to be a case that a carrier is going to be a stop long before an obligation to indemnify that insured arises. It's just the way things happen in the real life of a lawsuit and the tendering of a claim for defense. The summary judgment ruling that underwriters claims is not a policy defense is really kind of a fade. It has no significance whatsoever to coverage under the policy unless the factual underpinnings which represent the summary judgment ruling, essentially extrinsic facts to the complaint, are applied to the terms of coverage. Now, Mr. Noll, I agree that the estoppel doctrine does not apply to extra contractual defenses. Like, for example, if a policy is void. If the premium wasn't paid on a policy. For public policy reasons, the coverage for punitive damage awards. Those kinds of defenses that carriers can pro-offer to avoid indemnity obligations are never precluded by the estoppel doctrine. The estoppel doctrine precludes carriers from relying on policy defenses to avoid indemnity. And that summary judgment ruling is not anything unless it's tethered to the policy language. Now, underwriters really, I think almost for the first time, kind of conflates the idea of a policy defense to this idea of limitation exclusion condition. But, I mean, the language that we're talking about here that they're trying to really rely upon is the limitation in the amount of coverage that was given to 311. The insuring agreement in this policy for those who are insured provides coverage for claims for damages because of bodily injury. Well, that certainly was the case here. Mr. Hillesheim was bodily injured. There was a claim for damages against 311. That's within the insuring agreement. They were, in addition, insured under the policy pursuant to an endorsement to underwriter's policy. And that endorsement says that the who is an insured definition in the policy is amended to include as an insured the persons or organizations shown in the schedule, which are the 311 entities. Okay, so that is the grant of coverage. Claim for bodily injury, I'm an insured. What underwriters wants to do is rely on a limitation of that grant of coverage, which is the next part of the sentence in the endorsement, but only with respect to liability for bodily injury caused in whole or in part by not only TOGI's or Axel Emissions, but also anyone who happened to be a subcontractor of TOGI. And I'll get to that in a minute. Okay, so that is a limitation on the grant of coverage to 311. And that is precisely what they are trying to rely upon to avoid an indemnity obligation in this case by means of pointing to this summary judgment ruling saying, because TOGI would never be liable to the plaintiffs, therefore, ipso facto, there's no coverage. Well, there's no coverage because the policy limitation in the grant of coverage to 311 is operative or not operative. So it is a policy defense. And they are estopped. And the Circuit Court was entirely correct in the way that they viewed this. They applied the longstanding estoppel doctrine in Illinois. It's well known among Illinois jurists that this is what happens when you fail to defend your insured. There's a penalty. If you should have defended them, then you can't rely on a policy defense to avoid an indemnity obligation if that indemnity obligation ever comes. That's the law in Illinois and has been for at least 50 to 60 years. If we were to accept Underwriter's argument, it's a complete reversal of the estoppel doctrine in Illinois. And, you know, in some ways, my client, who is an insurance company, might like that. But that's not what the law is currently, which is why we brought this lawsuit and why we pursued it. Counsel, has there been any case law established in Illinois that distinguishes between the language contained in the coverage section versus the exclusion from coverage section of a policy? There is language which discusses the idea of what a limitation is to coverage. Frankly, it was cited in their reply, so I didn't have an opportunity to cite it. But there is case law, and I can supply that to the Court under a separate cover. But the idea of what a limitation in the policy is is not defined by where it is in the policy. Granted, but how would you, is the language, but only with respect, is that intended to be a description of coverage, what's included? Or are you saying that that should be something that is perceived as an exclusion within the coverage provision? It is a limitation of the coverage. It is, in some ways, it operates like an exclusion, but it really is a limitation. I think that's probably the best way to characterize it. The grant of coverage is the first part of the phrase. It's the who's an insured definition is amended to include, as an additional insured, the 311 entities. The actual insuring agreement isn't anywhere near this endorsement. It's at the beginning of the liability form, or entity, as it's even called, insuring agreement. We provide coverage for an insured, and now 311 is defined as an insured, for claim for damages because of bodily injury, which is the case here. This is not a case where the claim against 311 does not fall within the insuring agreement of the policy. It does. This is a case in which there is a limitation contained within the additional insured endorsement that restricts the grant of coverage. And so, as I said before, it's not where the thing is located. It's what is the effect of the term itself. And so, as I said, if Underwriters' position is to be accepted here, it is a reversal of the estoppel doctrine in Illinois. And I think it would create a situation, which Illinois courts have not wanted to do, in which a carrier can wrongly deny a defense to an insured without a penalty. Because the effect would be, in this case, all they have to do is pay for the defense costs, which they now have done, but only after they were sued and we got a judgment against them. So that is not before your honors, but they've continued to contest the judgment for the settlement, which initially was settled for much more than the amount that we actually sought from them, but we were also able to get additional recoveries to lessen that. So Mount Holly has been very active in an attempt to try to obtain as much recompense it can for its insureds, which is what its insureds wanted us to do. So if you don't have any other questions, I would ask the court to affirm the trial court's order and affirm the judgment in the amount of the $185,094.90 and award costs and post-judgment interest, because they're due in this case. Thank you, Mr. Dunn. Thank you. Mr. Novak? Five minutes, sir. Thank you. Just a few quick points. I think the issue is fairly well crystallized here in terms of looking at the additional insured endorsement and making a decision about whether that's a grant of coverage for the additional insured or whether it imposes a limitation on some other grant of coverage. And I think if you say it's a limitation, the question I would then ask is, well, then what's the grant of coverage? What is the additional insured provided under this policy? A defense, yes. That issue is not before you. But then, secondly, is there indemnification? The same issue, because it talks about liability, the same issue would attach to the additional insured as it does to the name insured. If there's no liability for the named insured, there could be no liability for the additional insured. We didn't insure the 311 entities for their own negligence. If they were negligent in their own right, that's their problem. That's their policy, not under underwriter's policy as an additional insured. So I think looking at that additional insured endorsement and making a determination about what it does, and, again, I would submit if you say, well, it does contain a limitation or an exclusion, well, then what's the grant of coverage that an additional insured has? And the second thing I would, I guess the last point I would leave the Court with is when looking at this question and listening to Mr. Duffy's comment, I kept thinking, can an additional insured ever have greater rights than a named insured? And I think if the Court were to affirm, the circuit court, that's what you in effect would be finding, that an additional insured can have greater rights than a named insured. And I think that that would be incorrect as a matter of law. The named insured is the one who drives the liability of the policy. The named insured was underwritten. The named insured paid the premiums, not the additional insured. Again, they're there by invitation. And the rights that they have are limited. So can an additional insured ever have greater rights than a named insured? And I would submit the answer is no. Mr. Novak? I'm sorry. Can you just in the time, I'd like you to be able to explain if there is a way to distinguish Corte construction with respect to the fact that there was excess policy, an excess carrier who tried to raise the defense of non-coverage also in that case. Corte, excess carriers are in a different category because of the defense issue. Excess carriers don't have defense obligations normally. There's arguments about drop-down. But I don't see Corte as having the application here of some of the others because all of our issues are driven from the breach of the duty to defend, and that's where I focused on trying to distinguish between that and the duty to indemnify. Would your position, if it were adopted by this Court, wouldn't that encourage insurance companies to not defend and just see what happens down the road and only run the risk of defense costs? No, Your Honor. I don't think so. Again, the facts. What's the downside? Well, the downside is the estoppel issue for duty to defend and duty to indemnify if there is no finding of liability. So I would submit that had TOGI not been granted summary judgment, I would not be before you. I'll be candid about that because we would never have known if the duty to indemnify ripened or not, so I couldn't stand up in front of you and say there was no finding that they were liable. Well, there was also no finding that they were not liable. Here, there was a finding that they were not liable, so we say that the duty to indemnify never ripened. That's why it wasn't breached and it wasn't a consequence of the breach of the duty to defend. There are different duties, different considerations arising at different times. So that's where we come at. I think it would be extremely risky for an insurer not to defend and that there would be no incentive at all for them to sit back and say,  I would think it's extremely risky for an insurance company not to defend under the long-established estoppel principles that if you violate that duty to defend, bad things can happen under the estoppel theory. Therefore, defend is the better, more conservative course of action. I agree, Your Honor. And I will tell you in the underlying, and I know you don't have much time, but in the underlying, TOGI was defended by underwriters. There were multiple contracts. In hindsight, I think the question was TOGI was a boiler guy. TOGI had nothing to do with demolition of brackets and radiators and things of that nature. That was the cause of the accident. There was a problem with the demolition. Nothing about the boiler. So I think a decision was made, we'll defend our people, but they don't have any exposure. We'll just go in and show that. I'm not defending the decision. I'm just trying to explain. I do not think that there was a conscious decision of anybody to say, well, we're not going to defend 311 entities because there's not going to be any exposure or any consequences if we don't. I do not believe at all that that was the decision. Thank you. If there are no further questions, I thank you very much, and I do ask for a reversal of the circuit court's rulings. Thank you. Thank you, Mr. Novak. This case is taken under advisement.